## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDON HATHEWAY, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>INTERNATIONAL MOTORS, LLC,<br><br>        Defendant. | **Civil Action No.: 1:25-cv-7989**<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Brandon Hatheway ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against International Motors, LLC (f/k/a International Motors, Inc.) ("International Motors" or "Defendant") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### NATURE OF THE ACTION

1.    It is both unfair and unlawful for entities like International Motors to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges International Motors's unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. Under ERISA, wellness programs must offer, and provide notice of, a reasonable alternative standard that allows all participants to obtain the "***full reward***"—including refunds for surcharges paid while completing the program. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). Instead, under Navistar Inc., Health Plan (the "Plan"), International Motors imposes a discriminatory tobacco

1

surcharge without providing participants with a reasonable alternative standard and fails to provide notice of the availability of a reasonable alternative standard, violating federal regulations and depriving employees of benefits to which they are entitled under ERISA.

2.      Tobacco surcharges have become more prevalent in recent years but to be lawful plans can impose these surcharges only in connection with *compliant* "wellness programs," meaning they must adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have issued clear regulatory criteria that "must be satisfied" to qualify for the statutory exception or safe-harbor, which they may invoke only if they can affirmatively demonstrate full compliance with all these strict requirements in response to claims that their program is discriminatory. Moreover, courts must defer to the agency's interpretation of its own regulations, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework, *Auer v. Robbins*, 519 U.S. 452 (1997), ensuring that plans cannot evade ERISA's anti-discrimination protections by selectively or improperly applying these rules.

3.      The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor." The regulations make clear that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows all participants to obtain the full reward, including retroactive refunds of surcharges paid while completing the alternative standard. A wellness program must be genuinely designed to

improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. International Motors's Plan fails to clearly establish a reasonable alternative standard, does not notify employees that such an alternative is available, does not ensure that employees who complete the alternative receive the "full reward," and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

4.     The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[1] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements

5.     Outcome-based programs,[2] such as smoking cessation programs, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly

---

[1] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[2] "An outcome-based wellness program is a type of health-contingent wellness program that

situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[3] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.*, 33160 (emphasis added). International Motors violates these requirements by failing to offer a reasonable alternative standard that provides full reimbursement to employees who complete that standard, operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly communicate the availability of a reasonable alternative standard in all plan materials referencing tobacco-related premium differentials, including plan documents and summary plan descriptions ("SPDs"). *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

---

requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**") ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

6.      International Motors cannot qualify for the statutory safe harbor because the Plan

fails to satisfy the essential regulatory criteria, which "must be satisfied," (*id*., 33160) for a

wellness program to be lawful under ERISA. Final Regulations, 33160. The core deficiency of

International Motors's wellness program is that it does not offer a reasonable alternative standard

that provides the "full reward" to all participants who satisfy the alternative standard, as explicitly

required by Section 702 of ERISA, 29 U.S.C. § 1182, 42 U.S.C. § 300gg-4(j)(3)(D), and 29 C.F.R.

§ 2590.702(f)(4). The Plan fails to offer a clearly defined, reasonable alternative standard that

ensures employees who satisfy that standard receive a full refund of the "additional premium of

$50 per month ($600 per year) for medical coverage." Instead, International Motors retains these

ill-gotten funds in its own accounts, earns interest on them, and therefore contributes less to the

Plan. By failing to administer its surcharge program in compliance with ERISA's wellness

regulations, International Motors cannot claim the protections of the statutory safe harbor and is

liable for its unlawful surcharge scheme.

7.      By failing to provide an alternative standard or a mechanism for retroactive

reimbursement to those who satisfy that standard, International Motors operates an unlawful

surcharge program that denies employees who smoke the opportunity to avoid the penalty, as

required by law. This is not a minor technical failure—it is a fundamental violation of the

regulation's core purpose: ensuring that participants have an opportunity to avoid the smoking

surcharge and receive the same financial benefit as those who meet the initial standard (i.e., non-

smokers).

8.      Further, International Motors failed to provide notice of a reasonable alternative

standard. Because International Motors does not offer an alternative standard, it also violated the

notice requirements regarding the alternative standard. It failed to notify participants of an

alternative standard that would provide them with the full reward and failed to include contact information for obtaining the alternative standard, despite the Departments' clear instructions that, for ERISA plans, wellness programs are required to be disclosed in these documents if compliance affects premiums. Final Regulations, 33166 ("a plan disclosure that references premium differential based on tobacco use . . . must include this disclosure"). These standalone notice violations of the Final Regulations disqualify International Motors from asserting the affirmative defense in response to the allegations herein that its tobacco surcharge program is discriminatory and violates ERISA. Upon information and belief, International Motors failed to include the required notice in all Plan/Benefits materials as required. Again, because Defendant does not offer a tobacco wellness program, it cannot satisfy the criteria for a "program[] of health promotion." By failing to offer an alternative standard, the tobacco surcharge International Motors imposes on participants is unlawful and discriminatory in violation of ERISA.

9.     International Motors bears the burden of proving that its tobacco surcharge program fully complies with every regulatory requirement under ERISA and its implementing regulations, including providing a reasonable alternative standard that allows all participants to avoid the surcharge and receive a full refund if they satisfy the alternative. International Motors cannot meet this burden because its Plan does not offer an alternative standard. Without a reasonable alternative standard, International Motors's surcharge is not a lawful wellness incentive, but an impermissible penalty imposed on employees based on a health factor. Also, International Motors fails to provide notice of a wellness program in all plan materials discussing the surcharge. Its failure to offer and communicate a reasonable alternative standard makes its tobacco surcharge facially unlawful under ERISA, and no amount of *post hoc* justifications can cure this fundamental defect.

10.     Plaintiff is a former employee of Navistar, Inc. ("Navistar") who paid the unlawful tobacco surcharges to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

11.     Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent International Motors from continuing to profit from its violations under 29 U.S.C. § 1109.  Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of herself and the Plan as a whole, seek appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

12.     Plaintiff Brandon Hatheway is, and at all times mentioned herein was, an individual citizen of the State of Oklahoma residing in the County of Tulsa. Plaintiff was an employee of Navistar, who paid a tobacco surcharge of $12.50 per paycheck ($600 annually) associated with the health insurance offered through Navistar during his employment. Plaintiff was required to pay this tobacco surcharge to maintain health insurance under the Plan.

13.     Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

14.     Plaintiff has satisfied all conditions precedent to bringing this action, including the exhaustion of administrative remedies. Specifically, Plaintiff timely submitted a written claim under the terms of the Plan and thereafter submitted a written appeal challenging the denial of that claim. The appeal was submitted in accordance with the procedures set forth in the Plan and in

compliance with ERISA. The Plan denied Plaintiff's appeal, thereby exhausting Plaintiff's administrative remedies.

15.     International Motors is a major American manufacturer of commercial vehicles and engines. It is a Delaware corporation with its headquarters in Lisle, Illinois. Traton SE is the parent company of International Motors.

16.     International Motors (formerly Navistar) is the sponsor of the Plan and the Plan Administrator under 29 U.S.C. § 1002(16). As of December 31, 2023, the Plan had over employees. International Motors's employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and § 28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

18.     This Court has personal jurisdiction over Defendant because it is headquartered in this District. Defendant has purposefully availed itself of the privilege of conducting business in Illinois.

19.     Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because Defendant is headquartered in this District and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

## I.     DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

### A. Statutory and Regulatory Requirements

20. To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1).

21. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*" (29 U.S.C. § 1182(b)(2)(B)(emphasis added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

22. Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

23. Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the Affordable Care and Public Health Service Acts in 2010, the Departments, published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

24. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies *all* the necessary regulatory criteria.

25. Compliance with the regulatory criteria is not optional. These criteria serve as the standard by which these wellness programs can be evaluated and are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("***these [F]inal [R]egulations set forth criteria for a***

*program of health promotion or disease prevention* . . . that *must be satisfied* in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . ." (emphases added)).

26.     Only by satisfying all of the criteria, can employers ensure their plans are wellness programs and "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* The criteria provide guidelines for employers to prevent them from using surcharges as a revenue-generating mechanism dressed up as a program of health promotion. If a program fails to meet even one of these requirements, the program does not qualify as a "program[] of health promotion" and cannot qualify under ERISA's statutory carve-out. In that case, any premium differentials imposed based on a health factor violate the statute's anti-discrimination provisions. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section *only if all of the [] requirements are satisfied*." (emphasis added)).[4] In sum, a wellness program that fails to satisfy each criterion is not a legitimate health promotion initiative but an unlawful penalty that discriminates based on health status, in direct violation of ERISA's protections.[5]

---

[4] Congress codified parts of the 2006 regulations regulatory criteria when, through the Patient Protection Act ("PPA") and ACA, it amended the PHSA, and incorporated (nearly verbatim) the regulatory language into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the [PHSA] [42 U.S.C. § 300gg *et seq.*] (as amended by the [PPA and ACA]) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]"). Since then, the Departments have, in accordance with the they were granted, updated the regulatory framework through the Final Regulations, refining and clarifying the requirements to ensure compliance with ERISA's nondiscrimination provisions and the statutory criteria established by Congress. *See* 42 U.S.C. § 300gg-4(n) ("Nothing in this section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section"); *see also* 45 C.F.R. § 146.121(f) (adopting identical language to § 2590.702(f)).

[5] Congress adopted these regulatory criteria when, through the Patient Protection and Affordable Care Act, it amended the Public Health Service Act, incorporating these criteria into ERISA. *See*

**B. Regulatory Criteria**

27.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: "The *full reward* under the outcome-based wellness program must be available to *all similarly situated individuals*." 29 C.F.R. § 2590.702(f)(4)(iv).

---

42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the Public Health Service Act [42 U.S.C. § 300gg *et seq*.] (as amended by the Patient Protection and Affordable Care Act) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]").

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

28. The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

29. Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard. Plans must ensure that at least once every 12-month period, participants are provided with an opportunity to avoid the surcharge for the entire plan year. Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard ***for that plan year***." (emphasis added)).

30. A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive***. . . ." *Id.* (emphases added). While

plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is *mandatory*, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, *the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year*. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine *how* to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) *as long as . . . the individual receives the full amount of the reward*.

Final Regulations, 33163 (emphases added).

31.     The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id.*; Final Regulations, 33180.

32.     For health contingent wellness programs, the DOL Regulations require the notice be disclosed "in all plan materials describing the terms of" the program. 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C § 300gg-4(j)(3)(E). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with

14

the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Thus, plans that charge their participants more and fail to provide a reasonable alternative standard or the requisite notice violate these requirements, preventing these wellness programs from qualifying for the safe-harbor exception and establishing them as discriminatory wellness programs.

33. International Motors' tobacco surcharge is unlawful because it is a surcharge and not a premium discount or a rebate. Further, even if imposing a surcharge were permissible under ERISA, it would be permissible only if International Motors offered a compliant wellness program. However, International Motors does not offer a wellness program.

## II.    DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

34. International Motors' tobacco surcharge is unlawful and discriminatory because it does not offer a tobacco cessation program (i.e., a wellness program) to nicotine-using participants, as required by ERISA. Rather than offering a structured tobacco cessation program directly to participants, the Plan forces employees to "discuss an alternative" with their doctor, then complete a form and return it to the benefits department. This practice impermissibly shifts the burden to participants, undermines the purpose of ERISA's wellness program framework, and fails to satisfy the requirements for safe harbor protection under 29 U.S.C. § 1182(b)(2)(B).

35. The Final Regulations provide clear examples of compliant and non-compliant tobacco surcharge programs. In Example 8, the group health plan imposes a tobacco "with smoking cessation program that is ***not*** reasonable." Final Regulations, 33180 (emphasis added). In this hypothetical, "the plan does not facilitate participant *F'*s enrollment in a smoking cessation program. Instead the plan advises *F* to find a program, pay for it, and provide a certificate of completion to the plan." *Id.*

36.     The applicable SPD states:

> Navistar Inc. will charge an additional $50.00 monthly health care premium for Employees who choose to smoke. ***In order to avoid this additional monthly cost, Employees must certify that they are a non-smoker***. . . . Rewards for choosing a smoke-free lifestyle are available to all Employees. If Employees think they might be unable to meet the standard for this reward, Employees ***might qualify*** for an opportunity to earn the same reward by a different means. Contact ERIC (Navistar's Employee/Retiree Information Center) and Navistar will work with Employees (and if they wish, their doctor) to find an alternative with the same reward that is right for the Employee in light of their health status.

37.     Further, the 2023 Benefits Enrollment form confirm that the Plan fails to provide a meaningful or compliant tobacco cessation program and instead places the entire burden of participation and cost on the employee. The enrollment form offers only two self-directed options for avoiding the surcharge: (1) certifying that the participant has reduced tobacco use by at least 50%, or (2) working with a personal physician on a cessation plan. As shown below:

| | | |
|---|---|---|
| 1) | **Non-Smoker to Smoker:** | You identified yourself as a non-smoker during open enrollment and now meet the company's definition of a smoker<br><br>☐   **I certify that I am a smoker.*** |
| 2) | **Smoker to Non-smoker:** | You identified yourself as a smoker during open enrollment and you no longer meet the company's definition of a smoker (PHYSICIAN'S SIGNATURE REQUIRED BELOW)<br><br>☐   **I certify that I am not a smoker.  Quit date was ____/____/____. **** |
| 3) | **Smoker to 50% Reduction:** | You identified yourself as a smoker during open enrollment and you have reduced your smoking by 50% (PHYSICIAN'S SIGNATURE REQUIRED BELOW)<br><br>☐   **I certify that I have reduced my smoking by 50%. **** |
| 4) | **Smoker Working with Physician on Personalized Plan to Quit:** | You identified yourself as a smoker during open enrollment and you are working with your personal physician to follow his/her recommended plan for smoking cessation. (PHYSICIAN'S SIGNATURE REQUIRED BELOW)<br><br>☐   **I certify that I am working with my physician on a personalized plan for smoking cessation. **** |

*\* Once you submit your completed form, the monthly smoking premium surcharge will be added for the remainder of the calendar year.*
*\*\* Upon receipt of your completed form, including a physician signature, the monthly smoking premium surcharge deduction will be removed for the remainder of the calendar year and a retroactive premium refund from the beginning of the same calendar year will be provided as soon as administratively feasible. Must be received by December 31, 2022.*
I the undersigned, being of lawful age, attest to the response above.

16

38.     Neither option constitutes a "reasonable alternative standard" under 29 C.F.R. § 2590.702(f)(4), and the form fails to provide any information regarding whether a smoking cessation program is offered, whether it is covered by the Plan, or whether International Motors bears any financial or administrative responsibility.

39.     Rather than offering a structured wellness program or facilitating access to a cessation program, the Plan forces participants to self-manage their cessation efforts or seek out and pay for their own physician-supervised plan, without any assurance that costs will be reimbursed. This mirrors the noncompliant approach described in Example 8 of the Final Regulations, in which a plan fails to meet ERISA's requirements by requiring participants to locate and pay for their own cessation program. *See* Final Regulations, 33180 (29 C.F.R. § 2590.702(f)(4), Example 8).

40.     By failing to affirmatively offer or administer a smoking cessation program and shifting the cost, effort, and responsibility entirely onto the employee, International Motors' program is unreasonably burdensome and fails to meet the requirements of a reasonable alternative standard. This design violates ERISA's anti-discrimination rules and disqualifies the Plan from safe harbor protection under § 1182(b)(2)(B). As a result, the tobacco surcharge operates as an impermissible penalty based on health status, in direct contravention of federal law.

41.     International Motors' program also fails the regulatory notice requirements. The Plan materials do not inform participants of their right to an alternative standard and do not describe how to access or complete it, in violation of § 2590.702(f)(4)(v). Because International Motors fails to offer a structured, accessible tobacco cessation program and fails to provide adequate notice of the alternative standard, its tobacco surcharge program is unlawful and not entitled to safe harbor protection under ERISA.

17

42. Had Defendant provided participants with adequate notice of the availability of a reasonable alternative standard, including clear instructions and contact information in all plan materials referencing the surcharge, Plaintiff and similarly situated individuals could have taken steps to avoid or reduce the unlawful tobacco surcharge. Defendant's failure to provide this required notice deprived participants of the opportunity to exercise their rights under ERISA and directly contributed to the financial harm suffered by the Class.

43. International Motors should have offered participants a reasonable alternative standard in the form of a smoking cessation program that allowed users to avoid the surcharge for the entire plan year, regardless of whether they quit using tobacco. International Motors should have offered the program at no cost to participants and ensured that it was accessible and not overly burdensome by, for example, providing for convenient times and locations.

44. Additionally, International Motors should have included clear and specific notice of the availability of the reasonable alternative standard in all Plan materials discussing the surcharge. That notice should have stated that an alternative standard (or waiver) was available, and International Motors should have provided the contact information for obtaining the alternative standard.

45. Allowing companies like International Motors to exploit their participants and unlawfully extract millions from them under the guise of a wellness program that is, in reality, a cash grab, directly contradicts ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law.

18

### III. DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

46. Defendant controls the administration of the tobacco surcharge, determining which participants are charged and withholding the surcharge amounts directly from participants' paychecks. These amounts are not placed in a trust account for the Plan but are instead deposited into International Motors' general accounts.

47. By retaining these funds, International Motors earns interest on the withheld surcharges and reduces its own financial contributions to the Plan. This practice constitutes self-dealing and violates ERISA's fiduciary duty requirements, which mandate that Plan assets be managed exclusively in the interest of participants and beneficiaries.

48. Defendant has fiduciary responsibilities to ensure that these funds are used to support coverage for participants' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendant increased its own bottom line allowing it realize financial benefits it would not have otherwise realized without imposing these surcharges, in violation of ERISA's fiduciary duty standards. International Motors' surcharge scheme allowed it to retain and earn interest on millions in employee-paid tobacco fees instead of using these funds to offset costs, such as subsidizing non-smoking participants, or funneling them back into the plan. That interest accrual directly benefited International Motors' bottom line, while depriving the Plan and its participants of valuable funds. In sum, these practices demonstrate that Defendant's wellness program is an unreasonable, revenue-generating scheme disguised as a health initiative, directly contravening ERISA's requirements and purpose.

### CLASS DEFINITION AND ALLEGATIONS

49. Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

50. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

51. Excluded from the Class are International Motors's officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

52. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

53. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

54. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

55. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

    b. Whether Defendant offers a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c. Whether Defendant provided the proper notices of an alternative standard in all the plan materials describing the surcharge;

d. Whether Defendant's tobacco surcharge program violates ERISA and the applicable regulations;

e. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge;

f. Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its surcharge program to ensure compliance with ERISA and applicable regulations;

g. The appropriate mechanisms to determine damages on a class-wide basis

56.     **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge and retaliated against for not choosing an off-duty smoke free lifestyle. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

57.     **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant have no defenses unique to Plaintiff.

58.     **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by

individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

59. Plaintiff seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

## COUNT I
## UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE
### (Violation of 29 U.S.C. § 1182)

60. Plaintiff re-alleges and incorporates herein by reference allegations 1–59 of this Complaint.

61. Defendant unlawfully imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums of $50 monthly on participants who use tobacco, and by failing to offer a meaningful wellness program—a reasonable alternative standard that is accessible, cost-free, and capable of being satisfied by participants—

Defendant imposes discriminatory premiums based on health status without satisfying the requirements for ERISA's safe harbor.

62.     ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." *See* 29 U.S.C. § 1182(b). Defendant's Plan violates this prohibition because it (1) fails to affirmatively offer a reasonable alternative standard to all participants who use tobacco; (2) forces participants to find and pay for their own cessation programs or work independently with a physician, as described in Example 8 of the Final Regulations; and (3) fails to provide notice of an alternative standard in all Plan materials discussing the premium differential. As a result, the surcharge scheme fails nearly every condition required to qualify as a nondiscriminatory health promotion program under federal law.

63.     Defendant's tobacco surcharge program violates ERISA § 702 and the Final Regulations, including but not limited to 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4), because it does not offer or administer a *reasonable* alternative standard; fails to provide adequate notice; and mirrors the noncompliant scheme outlined in Example 8 of the regulations, where a plan improperly requires employees to locate and pay for their own cessation program. Defendant's program is, in form and substance, an impermissible cost-shifting mechanism masquerading as a wellness initiative.

64.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b).

23

Because Defendant's surcharge program does not satisfy several of the criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

65.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress Defendant's violations of ERISA's anti-discrimination provisions outlined in § 1182(b) and § 300gg-4, including but not limited to injunctive relief, restitution, and any other relief necessary to remedy Defendant's unlawful conduct, as set forth in the Prayer for Relief.

## COUNT II
## BREACH OF FIDUCIARY DUTY
### (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

66.     Plaintiff re-alleges and incorporates herein by reference allegations 1–59 of this Complaint.

67.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

68.     Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to exclusively benefit itself, to the detriment of the Plan and its

participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plan.

69.     Each year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management of the Plan and its surcharge programs, including the decision not to offer a reasonable alternative standard. Each year, Defendant exercised discretionary authority with respect to the administration and implementation of the unlawful surcharge program by administering a wellness program without providing reasonable alternatives that allowed "all similarly situated individuals" to avoid the surcharge for the entire plan year, dictated the eligibility criteria and penalties for noncompliance, and failed to provide participants with the necessary notices.

70.     International Motors controlled and disseminated to all employees the contents of the Benefits Enrollment Guide describing the tobacco surcharge but failed to notify participants of a reasonable alternative standard by which they could avoid the entire year of surcharges regardless of when they satisfied the alternative standard in violation of the regulations. Further, International Motors failed to adequately and regularly review the terms of its tobacco wellness program and the accompanying communications to participants to ensure they complied with ERISA and the regulations. Year after year, Defendant failed to properly institute safeguards against administering a program that violated the statute and implementing regulations. These actions reflect International Motors' active role in administering a non-compliant "program[] of health promotion and disease prevention," resulting in an unlawful and discriminatory tobacco surcharge in violation of ERISA.

71.     International Motors also breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. International Motors acted disloyally by causing Plaintiff and members of the Class to pay tobacco surcharges that were unlawful because they were associated with a non-compliant wellness program.

72.     As a result of the imposition of the unlawful and discriminatory tobacco surcharges, International Motors enriched itself at the expense of the Plan, resulting in it receiving a windfall. Defendant breached its fiduciary duties by prioritizing its own financial interests over the interests of Plan participants by deducting from participants' paychecks the amounts of the surcharges without properly administering reimbursements to individuals who completed the wellness program in the second half of the Plan year. By administering the wellness program in a manner that precluded "all similarly situated individuals" from obtaining the "full reward," and by failing to adequately disclose participants' rights under tobacco wellness program, International Motors administered a program that disproportionately benefited itself at the expense of Plan participants. This practice resulted in an unjust enrichment to International Motors at the expense of Plan participants, demonstrating a failure to act solely in the interests of participants and beneficiaries, in violation of ERISA's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

73.     Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, International Motors caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—and improperly used Plan assets for its own financial advantage, in violation of 29 U.S.C. § 1106(a)(1). International Motors is a party in interest, as that term is defined under 29 U.S.C. § 1002(14), because it is both a Plan fiduciary and the employer of Plan participants.

74.     By retaining the amounts of the tobacco surcharges, International Motors increased its own monies and saved the money it would have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit. By retaining the surcharges without providing participants with the "full reward" to which they are entitled, International Motors improperly benefitted from its own wellness programs at the expense of Plan participants.

75.     Defendant breached its fiduciary duties by: failing to properly disclose material information about the wellness programs to participants, thereby misleading or depriving them of the ability to make informed decision; administering a wellness program that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the wellness programs (and the Plan) and Plan communications to ensure they properly complied with the regulatory requirements in violation of 29 U.S.C. § 1104(a)(1)(B). These breaches caused Plaintiff and the Class to incur unlawful and discriminatory surcharges. Had Defendant conformed with their fiduciary duties under ERISA, they would not have administered a non-compliant wellness program and/or would have reviewed the terms of the Plan and the wellness programs regularly to ensure they complied with ERISA and the implementing regulations and would have updated those programs and communications to comply with the law.

76.     As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

77.     Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A.  An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B.  A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C.  An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharges;

D.  A declaratory judgment that Defendant breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to adequately monitor the terms of the Plan and wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E.  An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all surcharge amounts Defendant collected;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J. Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L. An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated:   July 14, 2025                    Respectfully submitted,


**SIRI & GLIMSTAD LLP**

/s/ *Mason A. Barney*

Mason A. Barney (Bar No. 4405809)
Oren Faircloth (*pro hac vice* forthcoming)
Kimberly Dodson (*pro hac vice* forthcoming)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: ofaircloth@sirillp.com
E: kdodson@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*